### A. J. WAGGONER v. THE STATE.

*No. 1213.   Decided November 13th, 1895.*

**1.   Incest—Indictment—Description of Prosecutrix In.**

Where an indictment for incest alleges that the accused was the father of one F.
W., and that he had carnal knowledge of said F. W., it is not necessary that it should
further allege that the said F. W. was a female.

**2.   Same—Prosecutrix—Accomplice Testimony—Corroboration.**

Where an accomplice refuses to testify, or where the testimony of such witness
when given does not contribute in the least to the conviction of the accused, the
issue of corroboration is not involved.

**3.   Same—Argument of Counsel.**

On a trial for incest, where the accomplice has refused to testify, it would be error
for the State's counsel, in any argument, to refer to her refusal to testify, as a crim-
inative fact going to show the guilt of both accused and herself, and in such a state
of case it would be the duty of the court to instruct the jury that her failure to testify
could not be considered a criminative fact against the accused.

**4.   Charge of Court—Omission In.**

To avail of an omission in charge of the court which is not radical or fundamental,
the charge must be excepted to for the omission; or, a pertinent requested instruc-
tion supplying the omission should have been refused.

APPEAL from the District Court of Fannin.    Tried below before Hon.
W. A. EVANS, Special Judge.

This appeal is from a conviction for incest, the punishment being as-
sessed at ten years' imprisonment in the penitentiary.

We copy the following from the statement of facts relative to the wit-
ness Flora Waggoner.    "Flora Waggoner being sworn, testified for the
State as follows:  'I am 17 years old; the defendant is my father
(points him out in court).    My mother has been dead eight years.    I
lived with my father in Fannin County, about ten miles southeast from
Bonham.'   At this point, defendant's counsel addressed the court in
presence of the witness, and stated that he had been informed that the
witness did not want to testify against defendant, and with the court's
permission, stated to the witness that she was not compelled to testify
in this case.    Thereupon counsel for the State asked the witness the fol-

lowing question: 'Did your father ever come to your bed at night?' To which the witness replied that she did not want to testify in this case, and thereupon declined to testify further." Then next, the State introduced the witness M. S. Keller, and after the conclusion of his testimony, we copy the further facts from the statement of facts: "Flora Waggoner being recalled as a witness for the State, the District Attorney, A. J. Nichols, propounded to her the following question in the presence of the court and jury: 'Now, Flora, if you will testify in this case, and tell the whole truth about this matter, I, as the District Attorney of the State of Texas of this district, promise you in writing that I will not prosecute you for the offense of which your father is here charged, and will see that no other officer of the State of Texas prosecutes you for this offense, and my promise to you will serve as a complete bar against any prosecution that may be made against you for this offense; did your father ever come to your bed?' To which the witness replied that she declined to testify."

The evidence in this record which tends to show the alleged carnal knowledge, in addition to that hereinbefore set out, and in addition to the fact that it was proven that Flora Waggoner was pregnant about seven months quick with child, was the testimony of the witness, Esther Waggoner, which is here copied in full: "Esther Waggoner being sworn, testified for the State as follows: 'I am a daughter of defendant; am 15 years old; my mother has been dead eight years; defendant is my father; Flora Waggoner is my sister. Myself, sister Flora, my father and three smaller children have been living together about ten miles from Bonham in Fannin County, Texas; have been living together as one family for the last two years. There are three rooms in my father's house; two rooms fronting south and one room on the north of the west room of my father, and one or two of the little children slept in east room. Flora and myself occupied separate beds in west room; the bed occupied by Flora was in the S. E. corner of the room; my bed in N. E. corner of the room; there was one door between the room occupied by my father and the room occupied by us. Our home was on a farm, and my father was a farmer. I have seen my father frequently come into my room, generally about day break, and go to the bed of sister Flora and get in bed with her. These occurrences transpired within the last year. I saw the defendant several times, some time about last June and prior thereto; that on such occasions I would hear Flora's bed creak and pop. On several of these occasions when father would go to Flora's bed, I would see him get on top of her. I saw my father come to Flora's room and get on top of her several times during the month of June, 1895, in Fannin County, Texas.' The witness, Esther Waggoner, being cross-examined by defendant said: 'Each of the rooms were about 16 feet square; there were two windows in my room. My father usually made the fires in my room, about day break, and would make us get up. The bed occupied by my sister, Flora, was about six or eight feet from my bed. It was always about day or before day when father would

come in and get on sister's bed.　I never did, on any of these occasions, see sister Flora's limbs exposed.　Sometimes they were under cover and sometimes they were not.　I would always be in bed on such occasoins. On such occasions there would be no light in my room　other than what might be admitted through the windows.　I don't remember that the moon was ever shining on any of these occasions when　father would go to sister's bed.　In answer to counsel's question as to whether or not beds would creak when persons were getting in and　out of them, or when persons were turning over in them, she answered they would.'

RE-DIRECT BY STATE.—"Witness said these things about which she testified occurred in Fannin County, Texas, prior to filing bill of indictment in this case, and when defendant would go to sister's bed and get on top of sister Flora, the bed would creak five or ten minutes."　It was proven that defendant's reputation for moral character was good.

*Taylor & McGrady*, attorneys for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of incest with his daughter, and prosecutes this appeal.　Motion to quash the indictment was made, because it did not allege that Flora Waggoner was a female, or was the daughter of appellant.　It alleges that appellant had carnal knowledge of Flora Waggoner, and that appellant was the father of Flora Waggoner.　Was it necessary to the sufficiency of this indictment for it to allege that Flora Waggoner was a female, this not being done directly and specifically?　Then, was it necessary to allege that she was his daughter?　We think not.　See this question discussed and shown to be not necessary by Mr. Bishop in his work on Criminal Procedure (13th Ed.) § 952, and supporting authorities; Battle v. State, 4 Tex. Crim. App. 595.　Flora Waggoner was called by the State as a witness, proved the relationship to her father, but declined to further answer questions put by the District Attorney, although she was offered immunity from prosecution for any participancy in the alleged offense. She testified, however, that she was the daughter of appellant, and this was proved by all the witnesses.　The statute inhibits a conviction on the testimony of an accomplice unless corroborated.　The testimony of Flora Waggoner did not, in the least, contribute to the conviction of appellant, and hence she could not have been corroborated.　If counsel for the State had referred to the fact that she had refused to testify as a circumstance to show her guilt, and therefore appellant's guilt, it would have been the duty of the court to have instructed the jury that they could not use this failure on her part as a criminative fact against appellant.　This record contains no such matter, and we will presume the argument was conducted properly.　Counsel for appellant did not request an instruction that the jury could not look to the failure of this witness to testify as evidence of her guilt, and therefore evidence of

appellant's guilt. Nor did counsel except to the charge for this omission. The only objection touching this whole matter is that the court refused to give special instruction asked by appellant, upon the subject generally, in regard to the corroboration of accomplice testimony. There was no error in refusing this requested instruction. The evidence fully and amply supports the verdict. The judgment is affirmed.

*Affirmed.*