## CLAUD CARTER v. THE STATE.

### No. 3789.   Decided December 8, 1915.

### Rehearing denied January 12, 1916.

**1.—Rape—Sufficiency of the Evidence.**

Where, upon trial of rape upon a female under the age of consent, the evidence was sufficient to sustain a conviction under a proper charge of the court, there was no reversible error.

**2.—Same—Indictment—Female—Pleading.**

Where, upon trial of rape, the indictment followed the statute, except that it did not specifically allege that the person named upon whom the rape was committed was a female, but did allege she was not the wife of the defendant and that he had carnal knowledge of her, the same was sufficient. Following Battle v. State, 4 Texas Crim. App., 595.

**3.—Same—Name of Defendant—Practice.**

Where, upon trial of rape, the defendant objected to being tried under the name alleged in the indictment, stating what his name·was, and the court thereupon directed the proper order to change his name as authorized under the statute, there was no error.

**4.—Same—Witness—Discretion of Court.**

Where defendant objected to the prosecutrix testifying claiming that she was incompetent, but the court qualified his bill of exceptions by stating that the witness had sufficient intelligence to understand the obligations of her oath, there was no reversible error.

**5.—Same—Leading Questions—Witness.**

Where the witness was reluctant to testify, hostile to the State, and tried to shield the defendant, there was no error in permitting the district attorney to ask leading questions. Following Carter v. State, 59 Texas Crim. Rep., 73.

**6.—Same—Remarks by Judge—Bill of Exceptions.**

Where defendant's bill of exceptions to the remarks of the court in ruling on the question of permitting leading questions to be asked was without merit, there was no reversible error.

**7.—Same—Evidence—Opinion of Witness.**

Upon trial of rape, there was no error in permitting prosecuting witness to testify that she knew what it was to be in a family way and that she was then in a family way.

**8.—Same—Witness—Contempt of Court—Swearing Witness.**

Where, upon trial of rape, the prosecuting witness refused to testify and acted impudently towards the court, there was no error in the court's action in retiring the jury and fining the witness for contempt, by sending her to jail, whereupon she agreed to testify, and it was not necessary to reswear the witness when she was returned from jail.

**9.—Same—Date of Offense—Other Acts of Carnal Intercourse.**

Where, upon trial of. rape, the testimony showed three acts of sexual intercourse all in the same month a few days intervening, and the evidence sufficiently fixed the time of the transaction relied on by the State by other circumstances, there was no reversible error.

**10.—Same—Other Acts of Sexual Intercourse.**

Upon trial of rape upon a female under the age of consent there was no error in admitting in evidence other acts of sexual intercourse than the one upon which the State relied on for a conviction. Following Battles v. State, 63 Texas Crim. Rep., 147.

**11.—Same—Election by State—Charge of Court—Other Transactions.**

Where no motion was made after the State rested to require it to elect as to the transaction upon which the State would rely for a conviction, there being several acts of sexual intercourse in evidence, but the court in his charge limited the prosecution to the transaction selected by the State, there was no reversible error.

**12.—Same—Evidence—Declarations of Defendant—Family Way.**

Upon trial of rape, there was no error in admitting in evidence the declarations of the defendant that he would kill prosecutrix if she ever told that he had sexual intercourse with her, nor in admitting testimony of a physician that prosecutrix was in a family way.

**13.—Same—Venue.**

Where, upon trial of rape, the defendant sought to show that the alleged intercourse occurred in another county, there was no error in admitting testimony by showing the county line as run out by the county surveyor to show that the offense had been committed in the county of the prosecution.

**14.—Same—Evidence—Witness—Incrimination.**

Where, upon trial of rape upon a female under the age of consent, one of defendant's witnesses testified to having had carnal intercourse with the prosecutrix before she was of the age of consent and did not claim personal privilege to avoid incrimination, there was no error in overruling defendant's objection to witness' testimony on that ground.

**15.—Same—Sufficiency of the Evidence—Peremptory Charge.**

Where, upon trial of rape upon a female under the age of consent, the evidence was sufficient to support the conviction, there was no error in refusing a peremptory charge to acquit the defendant.

**16.—Same—Election by State—Charge of Court.**

Where, upon trial of rape upon a female under the age of consent, the evidence showed several acts of sexual intercourse, and the State elected to rely on a conviction upon a certain one of these acts, there was no error in

the court's charge that the jury might consider other acts · of sexual intercourse in determining whether defendant had the act of intercourse which the State had elected to try him upon.

**17.—Same—Age of Prosecutrix—Conduct and Remarks by Judge—Harmless Error.**

Where, upon trial of rape upon a female under the age of consent, the fact that prosecutrix was under the age of consent was not in controversy, the language and conduct of the trial judge in ordering the arrest in the presence of the jury of one of defendant's witnesses who had just left the stand, and had testified favorably for the defendant, and, while wrong, was harmless error, even if it did convey to the jury the opinion of the trial judge that the prosecuting witness, upon whom the alleged rape was committed, was under the age of consent, and there was no reversible error. Following Russell v. State, 53 Texas Crim. Rep., 500, and other cases.

**18.—Same—Rule Stated—Error—Practice on Appeal—No Injury Shown.**

The rule of this court is that although error may be committed it does not follow that the judgment should be reversed and the cause be remanded, unless some injury be shown to the defendant. Following Davis v. State, 28 Texas Crim. App., 542, and other cases.

**19.—Same—Case Stated—No Reversible Error—Charge of Court—Penalty.**

Where, upon trial of rape, the remarks and conduct of the trial judge were objected to on the ground that they conveyed his opinion to the jury that the prosecutrix was under the age of consent, but it appeared from the record that there was no controversy about this, and the court in his charge instructed the jury that they must acquit defendant if they had a reasonable doubt that the prosecutrix was under the age of consent at the time of the alleged sexual intercourse, and otherwise properly charged the jury, who assessed the lowest punishment authorized by law upon sufficient evidence, there was no reversible error.

Appeal from the District Court of Erath. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of rape upon a female under the age of consent; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Chandler & Chandler,* for appellant.—On question of remarks by the judge: Caruth v. State, 177 S. W. Rep., 973; McMahan v. State, 61 Texas Crim. Rep., 489, 135 S. W. Rep., 558; Deary v. State, 62 Texas Crim. Rep., 352, 137 S. W. Rep., 699; Scott v. State, 71 Texas Crim. Rep., 41, 160 S. W. Rep., 960.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—Appellant was convicted of the rape of his wife's sister, Stella Mayberry, who was alleged to be under the age of fifteen years at the time. The jury assessed the lowest punishment against him. The evidence was clearly sufficient to sustain the conviction.

The indictment follows the statute and is in the usual approved form, except that it did not specifically allege that Stella Mayberry

was "a female." It did allege, however, that Stella was not his wife and that "he did then and there ravish and have carnal knowledge of *her,* the said Stella Mayberry." Under the authorities, this indictment was good, even though it omitted to allege that Stella was "a female." Battle v. State, 4 Texas Crim. App., 595; Waggoner v. State, 35 Texas Crim. Rep., 199. The court did not err in overruling appellant's motion to quash.

Appellant was indicted under the name of *Pink* Carter. By various motions and exceptions, he objected to being indicted and tried under the name of Pink Carter, alleging that his true name was Claud Carter. The court thereupon directed the district attorney to erase in the indictment *Pink Carter* and insert instead *Claud Carter,* and entered an order of the court at the time to that effect. He, and all the other witnesses who testified on that subject, swore he was known and called by that name as well as his true name. The court's action was strictly in accordance with the statute, and the many decisions of this court thereunder. Arts. 456, 559, 560-561, C. C. P. None of appellant's bills of exception on this question show any error.

Appellant objected to the prosecutrix, Stella Mayberry, testifying, claiming that she was incompetent; that she did not understand the nature and obligation of an oath. The court in approving appellant's bill on this subject did so as follows: "With the qualification that the witness stated on her examination that she knew that it was wrong to tell a lie and that she would be punished if she swore a lie, but did not know whether she would be put in jail or the penitentiary, that people who told lies would go to hell, although some of them might go to heaven. The oath was explained to her and it appeared to the court that she had sufficient intelligence to understand its obligations. She made an intelligent witness, although she is uneducated and narrated the facts of the case in an intelligent manner, both on direct and cross-examination, and her evidence was corroborated in several particulars by other witnesses, and she was a competent witness." Art. 788, subdiv. 2, C. C. P., and authorities thereunder collated. The court correctly overruled appellant's objections on this subject.

The court correctly overruled all of appellant's objections to the district attorney's asking the witness Stella Mayberry leading questions. In approving his bills the court said: "With the qualification, the witness was reluctant to testify and hostile to the State and tried to shield the defendant and refused to testify against him and the court permitted the district attorney to lead her." Carter v. State, 59 Texas Crim. Rep., 73. Nor does any of appellant's bills as to the court's remarks on this subject show any error. Neither did the court err in permitting said witness to testify that she knew what it was to be *in a family way* and that she was then *in a family way.*

Stella Mayberry was the State's first witness. Before the introduction of the evidence she, with all the other witnesses, was duly sworn. She, when first put upon the stand and questioned by the State, refused to testify against appellant. The court thereupon retired the jury and

admonished the witness and required her to testify. She still refused to do so. The court ordered her to jail, and she was taken to jail. The court qualifies appellant's bill on this subject as follows: "With the explanation that the witness was reluctant, impudent and had conspired with her sister, the wife of defendant, to swear him out of this case, and the court knew she did know whether defendant had actually (had) intercourse with her or not, and determined to make her testify positively one way or the other, after observing repeated efforts of the district attorney to get her to testify without avail. The court retired the jury, then fined the witness and sent her to jail for her insolence and contempt, and within an hour she was anxious to return and testify, which she did." The court's action was proper and legitimate. Appellant's bill on this subject shows no error. It was unnecessary to reswear this witness when she returned from jail, and was placed upon the stand and testified.

Stella Mayberry testified to three acts of sexual intercourse by appellant with her, all in the month of March, 1915, a few days intervening between each act. Appellant has several bills objecting to her testimony on this point, because she could not, or would not, fix the exact day of the month when these several acts occurred. The court in approving his bills thus qualified them: "With the qualification that the witness could not give the exact date of the acts of intercourse defendant had with her, but testified that they occurred in the month of March, 1915. That witness and her mother went to defendant's house the latter part of February, 1915, and she had her menses in February and that the intercourse with defendant followed in March and she missed her periods in March and since it was shown by other testimony that the transactions relied on by the State occurred in March, 1915." The testimony was admissible and the court's ruling correct.

The appellant has some bills showing that he objected to Stella Mayberry testifying he had more than one act of intercourse with her. In approving one of these bills the court did so with this statement and qualification: "The evidence showed that prosecutrix was over thirteen years old at the time of the intercourse, and defendant was her brother-in-law, and her mother had placed her in his care while away from the house. Prosecutrix's mother being in attendance on defendant's wife while being attended during and following her confinement." The evidence was clearly admissible. Battles v. State, 63 Texas Crim. Rep. 147, and a large number of cases decided since then following it.

It seems, as soon as Stella Mayberry testified to said three acts of intercourse, appellant at once made a motion to require the State to elect upon which of the three it would seek conviction. The court at that time overruled his motion, qualifying his bill on the subject as follows: "While the witness was testifying the defendant objected to the State proving but one act of intercourse and that the State should be limited to but one, the court permitted the State to prove other acts and refused (informed) defendant that after the State had closed its

case an election could be required. No motion was made after the State rested or any time thereafter to require the State to elect as to the transaction on which the State would rely, but after the testimony was closed the court required the State to elect and limited the prosecution to the transaction selected by the State and instructed the jury accordingly." The court's action was correct.

The court did not err in permitting Stella Mayberry to testify that, when appellant had such first act with her, or just after it, he told her that, if she ever told it, he would kill her. This testimony was admissible. And so was the testimony of the doctor who made a physical examination of her in June, 1914, that he examined her for the purpose of seeing whether she was *in a family way* and found that she was pregnant and about three months, or a little more, *in a family way*.

It seems appellant sought to show that the place where Stella testified appellant had intercourse with her was not in Erath but in Palo Pinto County. The testimony of the witness Mitchell as to the county line between Erath and Palo Pinto Counties was properly admitted. The court in approving appellant's bill did so as follows: "With the qualification that the witness testified that he knew where the line between Erath and Palo Pinto Counties was. That said line was about one-half mile north of the town of Thurber. The act of intercourse relied on by the State occurring in said town. He further testified that he saw the line being run by the county surveyor of Erath County, and said line was recognized as the line between the two counties; and he knew it was the line from said facts."

Appellant introduced Worthy Shannon, who, on direct examination, testified to a state of fact, from which the jury could infer that he claimed he had had sexual intercourse with Stella Mayberry some time between the last of February and the first of May, 1915. The court did not err in permitting the State on cross-examination of him to have him testify specifically: "I had intercourse with Stella Mayberry." He claimed no personal privilege to avoid so testifying, nor did he object to so testifying. The court did not err in overruling appellant's objection to the testimony of said witness on cross-examination because it was an incrimination of him.

The court did not err in refusing to give either of appellant's special charges peremptorily requiring the jury to acquit him.

It was entirely proper for the court, under the circumstances of this case, in his charge to tell the jury that the State had elected to prosecute on a certain act of intercourse by appellant with prosecutrix clearly identified by all of the evidence without controversy, and that he was not on trial for any other act, if the jury believed he had other acts than the one so designated; and, further, that such other acts, if any, might be considered by the jury in determining whether or not he had the act which the State had elected to prosecute him upon if they throw any light on that issue, but for no other purpose. And appellant's objection to that charge is without any merit.

There is but one other question in the case. It is the only serious one presented. We will now state substantially the evidence, the charge of the court and the action of the trial judge complained of and decide the question.

The only controverted issue in the case was the fact of whether or not appellant had the act of intercourse with the prosecutrix on which the conviction was sought. The girl's age was not controverted by appellant.

The girl testified she did not know her own age. After so testifying she was not pressed on this subject by either the State or the appellant. Her mother testified: "I could not say exactly how old Stella is. Dude (Arizona) Johnson was with me when Stella was born." She was not pressed on this subject by either the State or appellant. Dude Johnson testified: "I know Stella Mayberry—I was present when she was born. She was born on the 18th of May, if I am not mistaken. It was in the year 1901. I have kept up with Stella's age by the age of my daughter Janie's little girl, who is from October to May older than Stella. Janie's little girl was born in October, 1900, and Stella was born in May, 1901." On cross-examination of her, she testified that she could be mistaken, but she did not think so. She was afraid to say she could not be mistaken as to the date, but she thought she was not. Appellant married Cynthia, the sister of Stella, who was just two years older than Stella. He introduced her as a witness, and she testified in his favor, but she was not asked by him, and she did not testify as to the age of Stella, nor her own. She merely stated that she was Stella's older sister. Appellant himself testified. On his direct examination he said nothing whatever as to the age of Stella. On cross-examination he testified that he married Cynthia, Stella's sister; that he did not know how much older Cynthia was than Stella, but their mother said Cynthia was two years older than Stella; that Cynthia was seventeen years old some time in May; that Stella's mother said Stella was fifteen years old last May. "Stella was not fifteen years old in March or February." So that, as stated, the fact that Stella was not fifteen years old at the time appellant had sexual intercourse with her, if he did, was not in controversy, appellant himself swearing positively that she was not fifteen years old at that time. The sole controversy was whether or not appellant had had sexual intercourse with her any time during March, 1915. Stella swore positively, not only to the act of intercourse by appellant with her, which act the State elected to claim a conviction on, but she also positively testified that appellant had two other acts of intercourse with her during said month. The testimony by other witnesses was corroborative of Stella as to appellant's being with her alone and having the opportunity at the respective times which she testified he had intercourse with her. He denied positively any act of intercourse with her. This controverted issue was for the jury. Not only the positive testimony by the State, but a preponderance of it, was in favor of the State on this issue.

Without dispute or controversy, the testimony showed that prose-

cutrix and her mother lived at Stephenville. Appellant and his wife lived at Thurber, in Erath County. Some time before, the exact time not disclosed, appellant had married Cynthia, the sister of, and just two years older than, Stella. That appellant had gotten her pregnant, and she was to be confined in March or April, 1915. That her mother, appellant's mother-in-law, went from her home in Stephenville to appellant's home in Thurber the latter part of February so as to be with, and attend to, Cynthia, his wife, when she was confined, taking her young daughter Stella, then under fifteen years of age, along with her to appellant's. That they stayed at appellant's from the latter part of February to the 3rd of May. In the meantime, between those dates, Cynthia was confined, and her baby was born. During the time of their said stay, Stella's mother repeatedly permitted her to go with appellant at night alone to several different functions. That she would not consent for Stella to go with any boys during or prior to this time, because, as she testified, she was not old enough to receive company. The particular act on which conviction was sought and had, according to Stella's testimony, was on the night she returned from a certain party, the evidence both by appellant and Stella's mother showing that her mother requested appellant to go after the girl and bring her home, thus expressly placing her in the care and custody of appellant, her brother-in-law. It was on this night when appellant brought her home from said party that he had the act of intercourse with her for which he was convicted herein. On her direct examination, the State did not ask her, and she did not testify, denying any act of intercourse with any other person than appellant. When he had her on cross-examination, he asked her and sought to show by her that during her mother's stay with his wife that she went out at night especially with other boys, or young men, and that they on these several occasions had opportunity to have intercourse with her, and he asked her specifically if she did not on these several occasions have intercourse with certain ones, naming them. She not only positively denied having intercourse with any of these boys, but positively denied being with any of them at any time when an opportunity for such an act could have occurred. In asking her if certain persons, naming them, on these occasions had not had sexual intercourse with her, he named several parties, among them Worthy Shannon. The State in rebuttal on this question put said witnesses, or some of them, on the stand, and they swore positively that they had not had intercourse with said girl and had had no opportunity. The State did not put said Worthy Shannon on the stand. Appellant did. However, in his cross-examination of Stella, he asked and she testified that, while she knew Worthy Shannon, she never went with him anywhere at night, nor was she at any place where he was after dark. In response to his questions about Worthy Shannon, she said: "I didn't tell Worthy Shannon that I could not get along without it, nor that I simply had to have it. Worthy Shannon did not have intercourse with me." When appellant put Worthy Shannon on the stand, who is a young negro about seventeen years old, appellant had him

testify on direct examination that he went home alone with Stella
Mayberry from the opera 'house one night. He said: "On the way
home that night Stella asked me would I give her a little piece, and
I told her yes, and she said she would not do without it if I would not
tell." No other inference could be drawn, and evidently it was appel-
lant's intention from this evidence that the jury should draw the con-
clusion, that on this occasion Worthy Shannon did have sexual inter-
course with her. On cross-examination by the State, he testified: "I
did it to Stella Mayberry that night coming home from the opera
house." Just after this witness had concluded his testimony and left
the witness stand and was still in the courtroom, the trial judge, in
the presence and hearing of the jury, said: "Mr. Sheriff, take charge
of this little negro, put him in jail and have the county attorney file a
complaint against him.", The sheriff was then present in the court-
room, and in the presence of the jury called to the witness to go with
him, and the witness followed the sheriff. The sheriff and county at-
torney, accompanied by the witness, then left the courtroom. It is not
shown that the county attorney then, or at any other time, filed any
complaint or took any action against the witness. To said remark of
the trial judge and action of the sheriff appellant then and there in
open court excepted, claiming that this was a comment on the weight
of the evidence, and that it was calculated to convey, and did convey,
to the jury the fact that the court believed prosecutrix to be under
fifteen years of age and was an expression by the court of his opinion
as to her age and a comment on the credibility of said witness and
calculated to, and did, prejudice his rights before the jury. This is
all shown by a proper bill of exceptions, and, as stated, presents the
only difficult question in the case.

We think there can be no question but that this remark of the trial
judge and the action and movement of the sheriff and county attorney
with said witness was wrong and presents error; but the question is,
does it present such material error as requires or authorizes the reversal
of the judgment? We think not. Her age was not in controversy.
Appellant himself swore positively that she was not fifteen years old
in March or February. The act of intercourse occurred in March. At
the time of the judge's remark and action of the sheriff and county
attorney in compliance therewith, nor at any time, did appellant re-
quest the court in writing or otherwise to disregard and not consider
what was then done and said. It is the settled law of this State that
a harmless, immaterial error is no cause for reversal. This has been
decided so long and so often and under so many variety of circum-
stances in cases that it is unnecessary to here collate all of them. The
rule in this State is well established to this effect: Where facts are
admitted to be true, or are placed beyond doubt without contest, the
court even in his charge may assume these facts as true without in-
fringing the law forbidding the judge to comment on the weight of
the evidence. That rule is applicable to this question in this case.
See Judge White's Ann. C. C. P., p. 525, where he quotes with approval

authorities to this effect, and collates a considerable number of cases supporting it. See also Kosmoroski v. State, 59 Texas Crim. Rep., 296; Russell v. State, 53 Texas Crim. Rep., 500; Nelson v. State, 35 Texas Crim. Rep., 205; Wright v. State, 93 S. W. Rep., 548; secs. 1057-8, Judge White's Ann. C. C. P.; Holliday v. State, 35 Texas Crim. Rep., 133; Nelson v. State, 35 Texas Crim. Rep., 205; Tracy v. State, 44 Texas, 9; Pierce v. State, 35 Texas Crim. Rep., 150; Height v. State, 68 Texas Crim. Rep., 278, 150 S. W. Rep., 908. How could it injure appellant for the court by the remark to intimate that Stella was under fifteen years of age when the fact that she was under age was not in controversy? And that she was under age was established by uncontradicted testimony, and by that of appellant himself, who swore positively that she was not fifteen years old? Judge Hurt, in Davis v. State, 28 Texas Crim. App., 542, said: "To reverse in the absence of probable injury would be contrary to principle." And this court, through Judge Davidson, in Tweedle v. State, 29 Texas Crim. App., 586, in discussing improper argument by the State's attorney, said: "Concede that this argument was improper. It does not follow that the judgment should be reversed for this cause. The remarks must not only be improper, but they must be of such a nature as would be clearly calculated to prejudice the rights of defendant. To reverse in all cases where counsel failed to confine themselves to the record would render trials farces." These cases have been many times cited, quoted and approved by this court, even down to almost this date. But let us see further what the court charged the jury. After, in the first paragraph, stating the case to the jury, in the next he told them: "You, gentlemen, are the exclusive judges of the facts proved, and the credibility of the witnesses, and the weight to be given to the testimony." Then follows the proper definition of the offense and the requisites the State must establish before a conviction could be had. In submitting the case to them for a finding, he required the jury to believe from the evidence beyond a reasonable doubt all of the facts necessary to convict, and they must further believe from the evidence beyond a reasonable doubt that Stella Mayberry was at the time of the act of intercourse, if any, under the age of fifteen years. And then, in a further paragraph, he tells them, if they do not so believe from the evidence beyond a reasonable doubt, to acquit him. And, again, in a separate paragraph, he tells the jury that, if Stella was at the time of the act not a person under fifteen years of age, "or if you have a reasonable doubt as to whether or not she was, you will give the defendant the benefit of such doubt and acquit him." He also charged the presumption of innocence and the reasonable doubt generally and told them that, "if you have such doubt as to his guilt, acquit him." The jury assessed the lowest punishment authorized by law.

Under the facts and circumstances of this case, the said error of the court is not such error as would require or authorize a reversal.

The judgment is affirmed.                      *Affirmed.*

[Rehearing denied January 12, 1916.—Reporter.]