# WILLIAM R. RAY V. STATE.

No. 24292. March 16, 1949.
Rehearing Denied June 22, 1949.
(See No. 24572. Rehearing March 8, 1950.)

348

HAWKINS, Presiding Judge, dissenting.

*H. S. Beard,* Waco, and *A. S. Baskett,* Dallas, for appellant.

*Charles T. Banister,* County, Attorney, Corsicana, *Stewart W. Hellman,* Criminal District Attorney, *Alfred M. Clyde,* Former Criminal District Attorney,, and *J. Elwood Winters,* Former Criminal District Attorney, all of Fort Worth, and *Ernest S. Goens,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The appeal is from a conviction for rape with a sentence of death.

Appellant was a soldier in the U. S. Air Force, stationed at Fort Worth. He was born and reared in Vernon, Texas. He was indicted for the offense of rape upon Linda King, who was alleged to be under the age of fifteen years. The case was transferred from the criminal district court of Tarrant County to the district court of Navarro County, presided over by the Honorable A. P. Mays as judge.

It appears from the record that much publicity was given to the crime and to the trial of the case. Under the circumstances this was inevitable. The courtroom was filled with spectators. There were news reporters with flashlight cameras, seeking every opportunity to catch something that would be accepted by their papers. It created a problem for the trial court which is seldom equaled this day and time. The fairness and ability of the judge who presided under such circumstances deserve more than passing notice. It demonstrates that the sometimes labeled "intricacies of criminal procedure" hold no terror for the judge who is properly prepared and who has a heart dedicated to the trial of his cases according to law. It is more remarkable in the instant case because of the carelessness in preparing the indictment and the reckless arguments of the prosecution which we are compelled to discuss herein at length.

It will not be necessary to discuss the evidence. The appellant's counsel in presenting the case, with sincere emotion and a proper conception of his duty and that of the courts, began by saying that his client was guilty, that the horribleness of the crime cannot be overdrawn, but that the guilty should be tried according to law the same as the innocent. This attitude is as commendable on the part of defense counsel as is that of the trial judge.

We will discuss the fourteen bills of exception which embrace and bring to this court the principal questions for our consideration. Bill of Exceptions No. 1 complains that during the session of the court at one time the trial judge stepped out of the courtroom momentarily, leaving the jury in the box. Immediately thereafter it is claimed that photographers approached within a few feet of the jurors with flashlight cameras, and ran from one portion of the courtroom to another, some of whom mounted the platform on which the court's bench was located and snapped flashlight pictures, taking a large number of the defendant and of the jury. When the judge returned objection was made to the things that occurred and the court was asked to declare a mistrial. Qualifying this bill the court

declined to certify what took place except that no communication of any kind was had by anyone with the jury, that it was at all times under the supervision of the sheriff's department. The bill as qualified and the facts before us do not give any information as to the purpose nor the results from the conduct complained of. We are left to speculate that it had some injurious effect on appellant's case. This we cannot do. There was no misconduct on the part of the prosecution, the jury, or the court. Any appropriate action which might have been taken, so far as this record discloses, would have been against those who intruded upon the sanctity of the court. We see nothing in the procedure which we can reach to give relief to appellant.

Bill of Exceptions No. 2 complains of the action of a photographer who sat near the jury box and approached within a few feet of the witness chair to take the pictures of witnesses. In the court's qualification he said that flashlight bulbs were not used in taking pictures at any time during the trial. One photographer made himself too conspicous before the jury, in the opinion of the trial court, and by his order was removed.

Bill of Exceptions No. 3 complains of the testimony of the witness Farnsworth as to a brief and minor argument between appellant and his wife, on one occasion, over a few dollars. The court sustained the objection to this and did everything he was asked to do by the defendant. We find nothing inflammatory about the evidence.

Bill of Exceptions No. 4 complains of a statement elicited from appellant's wife, while on the stand. In the first place, the matter seems trivial. By the court's explanation it is justified because of her testimony as to the drunkenness and mental condition of her husband.

Bill of Exceptions No. 5 complains of a question asked by the prosecution of appellant's wife. The court sustained the objection to this question and so qualifies the bill as to show that no error was committed even if the question had been answered.

Bill of Exceptions No. 6 complains of the effort of prosecution to bring into the case some extraneous matters, the nature of which is not revealed by the record. These matters had been presented to the court in the absence of the jury. They were understood by the court and his qualification removes any doubt of the correctness of the ruling.

Bill of Exceptions No. 7 complains of a question asked appellant while testifying in his own behalf, in which the prosecution referred to him as "William Ruthless Ray." His name is William Ruth (or Ruthes) Ray. The appellant himself took exception to the use of the name "Ruthless." In his qualification the court adopted that applied to Bill No. 6, reference to which will be hereinafter made.

Bill of Exceptions No. 8 contains objection to some theoretical discussion of a phychiatrist. The objection was sustained, "* * * to the latter part of the doctor's statement." This seems to have been satisfactory to appellant.

Bill of Exceptions No. 9 complains of the argument of Mr. Winters, in behalf of the state, referring to part of the doctor's testimony. The trial court, having in mind how much of the evidence he had excluded, qualified the bill by saying that the argument was justified. The statement of facts sustains his action. It is our conclusion that the entire matter was trivial. It had no probative force and received no consideration from a reasonably qualified and dispassionate jury.

Bill of Exceptions No. 10 complains of argument made by the district attorney of Tarrant County, in the closing argument of the case. The objection to this argument, as in many of the others, fails to negative the fact that it was made in reply to argument of the defense, or invited by it. In this respect the Bill of Exceptions No. 10 is defective, as are other bills hereinafter to be considered. It is noted, too, that the court in his qualification states that the argument was in direct reply to defendant's counsel.

Bill of Exceptions No. 11 complains of the argument of the same attorney. The bill is defective in the same manner as Bill No. 10 and has the same qualification.

Bill of Exceptions No. 12 complains of the reference made by the district attorney to the appellant as "Ruthless Ray." The careful trial judge sustained objection to the argument at the time it was made and gave the district attorney very positive instructions in the matter. We see no error shown by the bill. Certainly the reference is not inflammatory under the circumstances of this case.

Bill No. 13 complains of an argument by the district attorney in making reference to the service of the county attorney

and assistant county attorney of Navarro County, and his own service, in which he displayed to the jury by his gestures the fact that his right hand was missing. No objection was taken to this argument at the time and it cannot, therefore, be considered. The bill does not negative the fact that such argument, if harmful, was made in reply to or invited by argument of appellant's counsel and, furthermore, it is qualified by the court who said that he did not make any more display of his arm and missing hand than was usual and customary in a normal delivery of an argument, and that his statement was in direct reply to the argument of counsel for the defendant.

Bill of Exceptions No. 14 complains of further argument of the district attorney. The bill is defective and similarly qualified by the court as above discussed and need have no further consideration.

In argument before this court appellant's attorneys seek to raise a question about the testimony of the prosecutrix, Linda King, who was only nine years old. It involves the right of one to testify who is not amenable to the same punishment for perjury as the accused is for the crime with which he is charged. No objection was taken to her testimony at the time and no bill of exception is found in the record complaining of its introduction. The state relies on Santillian v. State, 147 Tex. Crim. Rep. 554, 182 S. W. 2d 812. In the state of the record we do not consider it before us for a decision.

In presenting the case to this court, appellant's brief treats of the complaint, made for the first time in this court, that the indictment in the case is defective. Admittedly it is carelessly drawn. It fails to embrace all of the statutory language in that it does not allege that the victim was a female person. Under the many authorities of the state, some of which will be referred to, the indictment must be held defective unless there is language in it to indicate the fact that the victim is a female person. No language can be added by implication or interpolation for this purpose and we must rely upon that which is found in the bill of indictment itself. No pronoun is used to indicate the sex, but it has the allegation that Linda King was under fifteen years of age and not the wife of the defendant. It is our conclusion that the name of the victim, "Linda," is the name of a female and not a male person. The authorities seem to hold that this allegation will make sufficient reference to the sex to comply with the statutory requirement. We quote from Texas Jur. Vol. 35, p. 809, as follows: "An indictment for rape need not

allege the sex of the victim, and the same is true of an indictment for an assault with intent to rape. While it would be better pleading to charge expressly the sex of the prosecutrix, yet the omission of such averment will not vitiate the indictment if the fact appears from all that is stated by the pleader. Sex may adequately appear by the use of the given name of the victim and the use of the feminine pronoun."

Quite a complete discussion of the subject is found in the opinion by Justice White in Battle v. State, Vol 4 Tex. App. 595. We find no modification nor criticism of this opinion in subsequent opinions of this court, nor of the courts of other jurisdictions. The decisions of several states are discussed and we find none which would assist appellant in his contention that the indictment herein considered failed to convey by its terms the allegation that the injured party is a female person. It is quite true that in most of these cases the feminine pronoun "she" or "her" was utilized, but a number of them also discuss the use of a feminine name which appears just as potent in the decisions as the use of a feminine pronoun. We think that the use of the feminine given name of the victim and the allegation that this victim was "not the wife" of the accused sufficiently apprizes him of the charge and will admit evidence of the facts relied upon in this case.

In the early case of Waggoner v. State, 35 Tex. Cr. R. 199, 32 S. W. 896, in an opinion by Judge Davidson, we find the same question raised in exactly the same kind of indictment as is now before us. Waggoner was charged with incest. The victim was not alleged to be a female, or his daughter, but her given name was alleged and it was that of a female person. It was alleged that the accused had carnal knowledge of such person. No pronoun was used indicating the sex. It was held that the indictment was sufficient. The case is authority for our holding that the indictment is sufficient in the case now before us.

In view of the penalty assessed, and the unusual circumstances under which the case was tried, we have considered every question in this appeal with great care and caution. We find nothing which might have in the least prejudiced appellant's case and are of the opinion that no error is reflected by the record.

The judgment of the trial court is affirmed.

354

ON MOTION FOR REHEARING.

**GRAVES, Judge.**

Appellant offers but one proposition in his motion for a rehearing and that is the contention that the indictment herein is insufficient in that same fails to allege that the person alleged to have been raped was a female. It is alleged that appellant did ravish and carnally know the child, naming her, and that such child was under the age of 18 years and was not the wife of the appellant. The decisions are numerous and uniform that such lack of allegation would have been cured in the event that the use of the personal female pronoun had been used in connection with the name, or with reference to the injured person. We are then relegated to the proposition as to whether there is alleged herein, in some manner, the female character of the person injured.

Mr. Bishop in his New Criminal Procedure, (2nd Ed.) Vol. 3, p. 1831, sec. 952, has the following to say:

"Though rape can be committed only by a male person arrived at puberty, and the victim must be a female,—and though the statute of Westm. 2 has the words 'man' and 'woman,' and our American statutes are in like terms,—it is not necessary to aver, in any case, either that the defendant is a man or that the victim is a woman. This is sometimes explained by the saying that the court will recognize the sex by the names and the pronouns. But this result is believed to follow equally and more properly from the general doctrine that neither the defendant's capacity to commit a crime nor the injured person's to be the victim of it need ever be alleged, a charge of its actual commission covering the whole ground and being always sufficient."

Mr. Wharton, in his Criminal Law, (10th Ed.) Vol. 1, p. 1011, sec. 740, relative to the crime of rape, says: "Sex need not be specifically averred," cititng cases from Arkansas, California, Indiana, Kansas, Massachusetts, Missouri, and also Cornelius v. State, 13 Tex. App. 349. He then follows with the statement showing the use of the feminine pronoun as supplying the place of such allegation, with cited cases from Kansas, Iowa, Missouri, North Carolina and Virginia.

It has been held by this court that the word "ravish" is a necessary word in charging a rape of a woman, and is equivalent to saying that one had carnal knowledge of a woman without her consent.

We quote from Fields v. State, 39 Tex. Cr. R. 488, 46 S. W. 814, as follows:

"At common law the term or word 'ravish' is essential in every indictment for rape; and it appears to include the idea that the party charged, forcibly and against the will of the woman, had carnal knowledge of the female. See Harman v. Com., 12 Serg. & R. 69. The learned judge in that case cites the definitions of the term 'ravish' by Lord Hale, Hawkins, and Chitty, which support the view above announced, to-wit, that the word 'ravish' is equivalent in meaning to carnal knowledge of the woman against her will and consent. For a further definition of the term 'ravish' see Harper v. Delp, 3 Ind. 225; O'Connell v. State, 6 Minn. 279 (Gil. 190) ; and Century Dictionary. This same view appears to prevail in this state. See Davis v. State, 42 Tex. 226; Elschlep v. State, 11 Tex. App. 301; Gibson v. State, 17 Tex. App. 574. Evidently, the pleader in this case, from negligence, left off the word 'knowledge' after the word 'carnal.' But we hold that this was immaterial, in view of the fact that the indictment contains the distinct allegation that the said W. S. Fields did then and there ravish the said Alice Requardt, which is equivalent to saying that he had carnal knowledge of her without her consent."

In Gibson v. State, 17 Tex. App. 574, it was contended that in a charge of rape of a woman that the peculiar wording of the statute demanded that the indictment should contain the word "woman" if the first portion of the statute, (now Art. 1183, P. C.,) was relied upon as the basis of a rape by force, threats or fraud of a person old enough to come within the age of consent, but that if the latter portion of such statute be invoked which reads, "or the carnal knowledge of a female under the age of (now) eighteen years", then it was contended that the word "female", being used relative to this woman over the age of consent, was a misnomer and rendered the indictment void. The court there held as follows:

"It will be seen that the charge, omitting and leaving out these words entirely, is that defendant 'an assault did make with the unlawful and·felonious intent, then and there, of him, the said John Gibson, her, the said Mary Johnson, *alias* Mary Gibson, to carnally know and to ravish.' The word 'ravish' or 'ravished' is the essential word in all indictments for rape or for assault with intent to rape; it is indispensable. (2 Bish. Cr. Proc., sec. 953.) It means all that is necessary to a charge of rape, and imports not only violence on the part of the man but resistance and want of consent on the part of the woman;

and where that word is used in an indictment for rape, it is but repetition to allege that the defendant carnally knew the woman forcibly and against her will. (*Davis v. State*, 42 *Texas*, 226. And see the same question we are discussing fully discussed, and the authorities cited, in *Williams v. The State*, 1 Texas Ct. App. 90, and *Mayo v. The State*, 7 Texas Cr. App., 342.) Under those authorities it is clear that the word 'ravish' used in the indictment before us, renders the words 'without the consent and against the will of' mere surplusage which may be disregarded as entirely unnecessary to the charge. If surplusage merely, then they should be eliminated and are not binding."

Again, it has been held in Williams v. State, 1 Tex. App. 90, that the word "ravish" implies force and violence in the man, and want of consent in the woman. That the indictment need not aver that the rape was committed against the will of the woman seems to be the opinion of authors of the highest authority, citing 1 Hale, 632; Hawk, b,2, ch. 25, sec. 56; 3 Chitty on Cr. Law, 812; and 1 East, 447. *** "It may be fairly concluded, from all the authorities, that the words 'against her will' are not essential; and certainly the word 'ravish', as commonly understood, implies that it was against her will. Harman v. Commonwealth, 12 Serg. & Rawle, 69."

Again, in Williams v. State, supra, in a quotation from O'Connell v. State, 6 Minn., 279, it is said:

"And, notwithstanding the statute prescribing the punishment uses the words, 'and carnally know by force and against her will,' these words also are omitted. The reason these words, or their equivalents, were not deemed essential was because they are all included or embraced in the word 'ravish' or 'ravished,' which is the essential word in all indictments for rape. It imports not only force and violence upon the part of the man but resistance on the part of the woman. *** But even at common law, where the greatest particularity was required, it was long since held that an indictment omitting the assault was not defective, and that the words 'feloniously did ravish' were sufficient, without the word 'carnally know and forcibly against her will.' "

In Davis v. State, 42 Tex. 226, it is said:

"The reason given for this is that, by the charge 'did ravish,' force and violence by the man, and want of consent of the woman, are implied."

If the word "ravish" can import violence and lack of consent, as held in many other cases, see Words & Phrases, Permanent Edition, Vol. 36, pp. 144-145, then is there any valid reason not to allow any additional imputation that is found in such word?

Webster's New International Dictionary (2nd Ed.), defines the word "ravish" to mean "to commit rape upon (a woman) ;" and rape is defined by Art. 1183, P. C., to be "the carnal knowledge of a woman without her consent obtained by force, threats or fraud, *** or the carnal knowledge of a female under the age of eighteen years other than the wife of the person with or without her consent and with or without the use of force, threats or fraud."

Then the argument necessarily follows that if the word "ravish" imports the rape of a woman, and carries with it the allegation that it alone imputes force and lack of consent, we are persuaded that such word should be given, not its partial import, but its full import; and by the same reasoning, be held to mean the rape of a woman, to-wit, the injured person set forth in the indictment.

Article 398, C. C. P., provides that "the certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."

Again, the certainty required to be shown in an indictment is a matter of statute, and is found in Art. 405, C. C. P., as follows:

"An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment; and in no case are the words 'force and arms' or 'contrary to the form of the statute' necessary."

But, in view of appellant's insistence that the word "female" is necessary to the validity of the indictment because a male person cannot be the victim of a rape, it is again seen that William R. Ray is nowhere in said indictment referred to as

358

a "male person," yet it is a matter of common knowledge that only male persons are able to themselves commit such crime. Therefore, we are relegated to the fact that the word "rape" imports the masculinity of the person charged, and if so, it seems to follow that the victim of a rapist—the ravished person—is a "female".

Then, the further allegation that the injured person was not the wife of appellant again carries an import that we can impute thereto that she was of a class that could only be classified as a wife because of her femininity as well as the evident female characteristics carried by her name, as is shown in the original opinion herein.

Taking all these different characteristics and statements together, we are convinced that the indictment would compel any "person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment." Certainly, no one would controvert the fact that such indictment is plain enough to plead in bar of a second conviction for rape on this same child. See Art. 398, Vernon's Ann. Tex. C. C. P.

The original opinion was agreeable to all of us when submitted. We thought it sufficient then, that a feminine name being used complied with the statute. I think so yet. What I have written herein is no recession from the view expressed in the original opinion, but is an additional discussion which I believe to be supported by sound reasoning and good authority.

The motion for rehearing will therefore be overruled.

HAWKINS, Presiding Judge (dissenting).

The present writer assumes responsibility for having agreed to the affirmance of the judgment in our opinion released on March 16, 1949. After further consideration and examination of our own authorities the conclusion has been reached that we were in error in holding the indictment good.

Our statute (Art. 1183, Vernon's Ann. P. C.) defines the character of rape with which we are here dealing in the following language: Rape is "the carnal knowledge of a *female* under the age of eighteen years other than the wife of the per-

son with or without her consent, and with or without the use of force, threats or fraud." Omitting formal parts, the present indictment charges that appellant "in and upon Linda King, then and there under the age of fifteen years, did make an assault, and the said Defendant did then and there ravish and have carnal knowledge of the said Linda King, the said Linda King not being then and there the wife of the said Defendant." It will be observed that there is no averment that Linda King was a female, nor any reference to her by the use of a feminine personal pronoun.

There seems little excuse for such carelessness in drawing such an indictment, and the blame should be placed where it belongs. In White's Annotated Texas Penal Code, and Forms of Indictments, published in 1897, the form for such an indictment specifically includes the averment that the assaulted party was a "female," and every edition of Willson's Criminal Forms likewise includes such averment.

It may be well to recall some fundamental principles long recognized and announced by our court regarding the sufficiency of indictments, and then ascertain how they have been applied in prosecutions for rape.

The averments in an indictment should be direct, positive, and certain, not argumentative or inferential. Moore v. State, 7 Tex. App. 608; Hunt v. State, 9 Tex. App. 404; Kerry v. State, 17 Tex. App. 178. The facts constituting the offense must be averred directly, forcibly and with certainty, and not by way of argument or inference. Parker v. State, 9 Tex. App. 351; Thompson v. State, 16 Tex. App. 159. "But inferences and intendments cannot be indulged in testing the sufficiency of an indictment or information. The facts which constitute the offense must be directly and explicitly averred, and the rule is imperative, and not to be disregarded. Everything should be stated in an indictment or information which it is necessary to prove." Brown v. State, 26 Tex. App. 540, 10 S. W. 112.

"All that is essential to constitute the offense must be explicitly charged and cannot be aided by intendment. The mere statement of a legal result or a conclusion of law will not be sufficient. The facts constituting the crime must be set forth so that the conclusions of law may be arrived at from the facts stated." Ford v. State, 108 Tex. Cr. R. 626, 2 S. W. (2d) 265; Jones v. State, 118 Tex. Cr. R. 106, 38 S. W. (2d) 587.

These fundamental principles were announced by our own court in construing indictments after the legislative department of our State Government undertook to prescribe forms of indictments which would be sufficient. See Acts of the Legislature in 1881, Chapter LVII., Gammel's Laws of Texas, Vol. 9, p. 60. While not saying so, perhaps, in exact words, our court very clearly held that it was a judicial function and not a legislative function to say when an indictment did or did not charge an offense, and that the legislative department could not infringe upon the judicial department in that particular under our constitution providing executive, legislative and judicial departments. These fundamental principles are as true, and should be as binding, today as when announced.

The writer of the opinion of affirmance very correctly said that the "indictment (in the present case) must be held defective unless there is language in it to indicate the fact that the victim is a female person. No language can be added by implication or interpolation for this purpose, and we must rely upon that which is found in the bill of indictment itself. No pronoun is used to indicate the sex, but it has the allegation that Linda King was under fifteen years of age and not the wife of the defendant. It is our conclusion that the name of the victim, 'Linda', is the name of a female and not a male person." It is with this conclusion that the present writer finds himself in disagreement. In the absence of a feminine pronoun in the indictment referring to Linda, who is to decide that it is a feminine name? If, perchance, some one of the judges knows a girl whose name is Linda and some other judge knows a man whose given name is Linda, which one controls in the absence of a direct averment in the indictment? Can this court take judicial knowledge that all Lindas are girls and thus substitute judicial knowledge for the absence of an averment of fact? The danger of such a course was demonstrated by an incident which occurred in our own court not more than ten days ago. A conviction for vagrancy was before us against one "Jettie------." The judge who prepared the opinion assumed that "Jettie" was a woman and referred to her as "she" and "her." Fortunately, our attention was called to the fact by the prosecuting officers that "Jettie" was a man in time to correct the opinion before it was published.

The case of Battle v. State, 4 Tex. App. 595, is cited as authority relative to "Linda" being the name of a female. In the indictment there, the alleged victim was alleged to be Theresa Gaudaloupe, and while there was no direct averment that said

person was a female, in three separate places in the indictment the feminine pronoun is used: "against the will of *her*," "attempt by force *her*," and "with intent *her*." The only reference to her name being that of a female is found in the next to the last paragraph in the opinion in which the court said:

"Using as does the indictment in this case, the personal pronoun 'her' as many as three times in connection with the name of the assaulted party, and the fact that her Christian name is 'Theresa,' which is a name generally born by a female, we think the indictment sufficiently describes the injured party as a female, or woman."

In Carter v. State, 78 Tex. Cr. R. 240, 181 S. W. 473, there was no direct averment that the assaulted party was a female, but she was referred to in the indictment by the feminine pronoun "her." The Battle and Carter cases, supra, are the only cases we have found or to which our attention has been called as bearing directly upon the point at issue. The difference in those cases and the one under consideration is apparent. The writer has been conscientiously forced to the conclusion that no averment in the indictment supplies the statutory requirement of an allegation that the injured party was a female.

If the present writer properly construes the opinion of my Brother Graves on rehearing, it resolves itself into the expression of the opinion that all that would be necessary to charge a party with rape would be to allege that "A. B. did ravish C. D." That seems to have been the view of the legislature in 1881, referred to in the beginning of this opinion, because Form No. 8 prescribed the proper indictment for rape would be "A. B., an adult male, did rape C. D., a female." See Gammel's Laws of Texas, Vol. 9, p. 61. It can well be understood why this suggested form was denounced by the court as bad because it undertook to charge a statutory crime without alleging a single material element of the offense of rape as defined in our statute, save that even that legislature thought the pleader ought to allege that the injured party was a "female" and the accused a "male" person. In his concurring opinion overruling the motion for rehearing my Brother Beauchamp disagrees with my Brother Graves, and upon that point at least this dissenting opinion reflects the views of a majority of the court.

The present writer is always reluctant to disagree with his brethren, but in the instant case he believes it sufficiently important to the jurisprudence of the state to record his views.

The crime was dastardly and doubtless proper punishment would be meted out to the accused, but it ought to be done in a conviction secured under an indictment which properly charges the offense.

Having reached the conclusion that the indictment was fatally defective, it follows that in my opinion the motion for rehearing should be granted, the judgment of affirmance set aside, and the prosecution under the present indictment be dismissed. So believing, I respectfully register my dissent to the conclusion of my brethren.

BEAUCHAMP, Judge (Concurring).

I am concurring in the opinion of my associate, Judge Graves, in overruling appellant's motion for rehearing. In doing so, I desire to state that I cannot concur in all of the reasoning indulged. I cannot give effect to the word "ravish" to the extent that this opinion does, nor can I agree that any words may be added by implication or interpolation for the purpose of making the indictment complete. The original opinion expresses my view on that subject.

I also adhere to the original expression that Linda, being a feminine name, gives female characteristics to the alleged victim. It is true that feminine names are sometimes given to male persons, but, like other exceptions to rules, that should not destroy the rule. My concurrence in the order overruling the motion for rehearing is based on the discussion found in the original opinion affirming the case.